m.     It shall assess the policy, procedures, and current practices to ensure that vessel vendors, technicians, and other non-crewmembers who are boarding and/or sailing with the vessels follow MISUGA requirements regarding pollution prevention and environmental protection.

n.     It shall assess the policy, procedures, and current practices used to manage the existing seal tracking and valve locking program, including the storage of seals and preventing the use of duplicate seals.

o.     It shall assess the policy, procedures, current practices, and equipment used to maintain refrigeration units, including availability and status of refrigerant recovery units, procedures for recovering refrigerants, and maintenance of a leak log.

p.     It shall assess the policy, procedures, current practices, and equipment related to Oil Transfer Procedures, including slops discharges, conditions of hoses, connections and transfer equipment, and shall include reviews of Declarations of Inspections.

q.     It shall assess the policy, procedures, current practices, and equipment used to handle emergency releases of hazardous fluids or pollutants on deck or within machinery spaces of vessels, including a review of the shipboard oil pollution emergency plans and evaluation of personnel performing such duties.

r.     It shall assess the policy, procedures, and current practices associated with ballast water management and invasive species requirements.

s.     It shall include a survey of all engineers serving onboard covered vessels at all levels for information on how to make the OWS, OCM, associated systems and waste management processes tamperproof and for methods on reducing or handling waste accumulations within machinery spaces. Participation shall be mandatory for all engineering personnel. The survey shall request the opinions of the vessels' engineers into their ability to adequately maintain the vessel systems, equipment and components. The survey will emphasize non-retaliation for open and honest opinions and reports of current noncompliant circumstances. The responses will be maintained in original format and made available to the CAM. The original survey responses shall be included in the Report of Findings.

(4)     At the conclusion of the first year of probation, the TPA shall prepare a Report of Findings. If the TPA believes that additional time is needed to analyze available information, or to gather additional information, or to complete the Report of Findings, MISUGA may request that the Government grant the TPA such additional time, as required, which request shall not be unreasonably denied. If necessary, the Government may grant additional time in thirty (30) day increments for completion of the Report of Findings. The Report of Findings shall be provided to MISUGA, the CAM, and the United States. Based on the Report of Findings, MISUGA shall develop and or update the Environmental Management System (EMS) as described below.

(5)     The CAM shall be assigned the following tasks and responsibilities and provide written submissions to the Court as set forth below:

    a.     Review the relationship between MISUGA and the TPA and evaluate the adequacy of measures taken to ensure that the TPA acts with independence.

    b.     Conduct a review and submit an annual report to the United States and MISUGA regarding each of the audits conducted pursuant to the Plea Agreement and the ECP. The CAM's reports shall provide a summary of the findings regarding the adequacy of any audits required by this ECP and adequacy of recommendations for change, as found necessary.

    c.     The annual report shall also include and address any other information that the CAM is aware of which pertains to MISUGA's capabilities to meet the objectives of this ECP or any other marine environmental protection requirements.

(6)     If the CAM receives information regarding a direct violation of any applicable existing marine environmental protection requirement or requirement of this ECP, the CAM must immediately report the occurrence to the United States and Misuga. At any time during the probationary period the CAM may inspect or investigate any aspect of the TPA's activities as they relate to the requirements of this plan or with respect to MISUGA's operations, and shall be provided full access to all records, audit personnel, vessels and shore side facilities as is necessary to perform its duties.

(7)     The CAM shall provide any additional reports, in both electronic

and hard copy form, to the United States and MISUGA as requested by the Court or as appropriate and to include inadequacies in the audit process, violations of the terms and conditions of the ECP and EMS and any other findings of significant problems or deficiencies.

(8)   All audits performed by the TPA shall take place during an underway voyage to the maximum extent possible since that is the best way for auditors to observe ship operations and personnel. As set forth herein, the TPA is encouraged to conduct underway audits during voyages of short duration (2-3 days) to the maximum extent practical. If this is found impractical within the specified time-frame, then the CM or TPA may conduct the audit when the vessel is in port. The TPA and CM should communicate frequently regarding ship movements so that the TPA can plan accordingly.

## H.   ENVIRONMENTAL MANAGEMENT SYSTEM MANUAL

(1)   Within nine (9) months of receiving the Report of Findings after the first year of probation from the TPA, MISUGA shall prepare and/or update the procedures contained in the EMS, which shall describe and document the EMS and contain any additional EMS implementation schedules as needed to ensure complete compliance in all operations and procedures. If MISUGA believes that additional time is needed to analyze available information or to gather additional information to prepare and/or update the EMS, MISUGA may request that the Government grant it such additional time as needed to prepare and submit the EMS, which request shall not be unreasonably denied. If necessary, the United States may grant additional time in thirty (30) day increments for completion and/or update of the EMS.

(2)   MISUGA shall submit a proposed final EMS to the CAM, the TPA, and the United States immediately upon its completion. The TPA and the United States shall provide comments on the proposed final EMS within sixty (60) days of receipt unless additional time for review is requested in writing. MISUGA shall submit a supplement to the EMS or a written response, as appropriate, within sixty (60) days of receipt of the comments. The EMS is subject to final approval from the United States, which approval shall not be unreasonably withheld.

(3)   All elements of the final EMS shall be fully implemented no later than nine (9) months following final approval by the United States. Upon receipt of final approval, MISUGA shall immediately commence implementation of the EMS in accordance with the schedule contained in

18

the EMS Manual. MISUGA shall submit reports to the United States beginning no later than one hundred twenty (120) days following the publication of the Report of Findings by the TPA regarding the status of the development and implementation of the EMS and the results of the Review and evaluation of MISUGA operations or audits conducted pursuant to the EMS. These reports shall be made on an annual basis.

## I.   FINAL EMS/ECP COMPLIANCE AUDIT

(1)     Beginning no later than twenty-four (24) months from the date of sentencing, MISUGA shall arrange for, fund and complete a Final EMS/ECP Compliance Audit for the Covered Vessels. These audits should take place on voyages of short duration (2-3 days) to the maximum extent practical. The audits are to be conducted to verify compliance with applicable environmental laws and regulations and the requirements of this EMS and ECP. During this final audit phase MISUGA shall immediately advise the CAM and the Government of any issue that comes to its attention that adversely impacts MISUGA's compliance with all applicable laws and regulations and the EMS/ECP.

(2)     The Final EMS/ECP Compliance Audits shall be conducted, as much as is practicable under the circumstances, in accordance with the principles set forth in ISO 9000 and ISO 14011, using ISO 14012 as supplemental guidance, and shall assess conformance with all requirements presented in the EMS and with the additional requirements of this plan. Designated United States representatives may participate in the audits as observers at Government expense. MISUGA shall make timely notification to the United States regarding audit scheduling in order to make arrangements for observers to be present.

(3)     The TPA shall deliver each vessel's and facility's audit report to the CM upon completion. In addition, the TPA will deliver an Audit Report to the United States within thirty (30) days after the completion of each audit. If the TPA believes that additional time is needed to analyze available information or to gather additional information, MISUGA may request that the Government grant the TPA such additional time as needed to prepare and submit the Audit Report. If necessary, the Government may grant additional time in thirty (30) day increments for completion of the Audit Report.

(4)     The Final EMS/ECP Compliance Audit Reports shall present the Audit Findings and shall, at a minimum, contain the following information:

(a)   Audit scope, including the time period covered by the audit;

(b)   The date(s) the on-site portion of the audit was conducted;

(c)   Identification of the audit team members;

(d)   Identification of the company representatives and regulatory personnel (if any) observing the audit;

(e)   The distribution list for the Final EMS/ECP Compliance Audit Report;

(f)   A summary of the audit process, including any obstacles encountered;

(g)   Detailed Audit Findings, including the basis for each finding and the Area of Concern identified;

(h)   Identification of any Audit Findings corrected or Areas of Concern addressed during the audit, and a description of the corrective measures and when they were implemented;

(i)   Certification by the TPA that the Final EMS/ECP Compliance Audit was conducted in accordance with this document and general audit principles.

(5)   Within sixty (60) days from completion of the Final EMS/ECP Compliance Audit of a particular facility or vessel, MISUGA shall develop and submit to the United States, for review and comment, an Action Plan for expeditiously bringing MISUGA into full compliance with all applicable laws and regulations and the EMS/ECP to the extent not already completed. The Action Plan shall include the result of any root-cause analysis, specific deliverables, responsibility assignments, and an implementation schedule. MISUGA may request that the United States permit a brief extension of the time limit stated above on a case by case basis. Such permission shall not be unreasonably withheld.

(7)   The Action Plan shall be reviewed by the United States which shall provide written comments within thirty (30) days of receipt. After making any necessary modifications to the Action Plan based on the comments, MISUGA shall implement the Action Plan in accordance with the schedules set forth therein. Within thirty (30) days after all items in the Action Plan have been

completed, MISUGA shall submit a written Action Plan Completion Confirmation to the United States.

## J.    NON-COMPLIANCE

(1)    This EMS/ECP does not in any way release MISUGA from complying with any applicable international conventions and treaties, State or Federal statutes and/or regulations, the ISM Code, or other applicable international maritime conventions or treaties and does not limit imposition of any sanctions, penalties, or any other actions, available under those international conventions and treaties, State or Federal statutes and regulations, the ISM Code, or other international maritime safety conventions or treaties.

(2)    The EMS/ECP shall be part of the Plea Agreement and adherence to it will be a condition of probation. Failure to comply with any part of this EMS/ECP may be considered as Non Compliance. MISUGA within sixty (60) days from the identification of Non Compliance shall develop and submit to the United States, for review and comment, an Action Plan for expeditiously bringing MISUGA into full compliance. The Action Plan shall be reviewed by the United States which shall provide written comments within thirty (30) days of receipt. After making any necessary modifications to the Action Plan based on the comments, MISUGA shall implement the Action Plan in accordance with the schedules set forth therein. Within thirty (30) days after all items in the Action Plan have been completed, MISUGA shall submit a written Action Plan Completion Confirmation to the United States. Failure of MISUGA to implement agreed Action Plan may be a violation of the Plea Agreement and may be grounds for the revocation or modification of MISUGA's probation. Should the United States seek to revoke or modify MISUGA's probation based on MISUGA's refusal to pay valid charges for the TPA or CAM and/or its failure to provide the TPA or CAM access to vessels, facilities, personnel, or documents, and/or as the result of any disagreement regarding any of the provisions of this EMS/ECP, MISUGA shall have the right to fully contest such revocation before the appropriate U.S. District Court.

## K.    CM/VESSEL MASTER RESPONSIBILITIES

The Master of any Covered Vessel shall ensure that timely reports are made to the CM of any non-complaint condition on a Covered Vessel. The CM shall ensure that timely reports are made to the United States of any non-compliant condition on a Covered Vessel. MISUGA shall establish that enforcement of and employee compliance with the EMS/ECP, ISM Code, MARPOL, and all applicable State and Federal safety and environmental statutes and regulations is an important positive factor and that failure to comply with such policies, regulations, and laws will be a

negative factor in all appropriate personnel evaluations.

## L.    BOARD OF DIRECTORS

MISUGA shall ensure that at least yearly MISUGA's MD receives and reviews reports from the CM and any applicable report from the TPA and CAM concerning the implementation of this EMS/ECP, including environmental compliance, EMS implementation, and manager, officer, and crew training. Copies of those portions of the meeting agendas and internal company reports concerning these items shall be included in the reports to the United States.

## M.    TRAINING REQUIREMENTS

(1)    The CM will be responsible for developing training programs to educate and train MISUGA Covered Vessels and shore-side employees associated with the operation and management of its Covered Vessels. MISUGA will appoint a Fleet Training Officer, who may be the CM, to ensure that the requirements of this section are met.

(2)    Training shall occur annually for all employees and be performed by qualified instructors before an employee assumes his or her duties. The training shall consist of pertinent sections of this ECP, the EMS, and existing marine environmental protection requirements. The training shall include shipboard-related technical and practical information associated with pollution prevention and the operation, maintenance and repair of pollution prevention equipment and systems, and be appropriate for the work responsibilities and department in which an employee works. The training must include discussion of the consequences to MISUGA and its employees for failure to comply with the requirements of this ECP, EMS, and existing marine environmental protection requirements.

(3)    A basic initial training program shall be provided to Covered Vessels employees currently onboard vessels in an effort to promptly mitigate pollution risk and ensure environmental protection. Additionally, employees must receive shore side training prior to returning to a vessel on a new contract.

(4)    The training shall include instruction regarding:

(a)    Corporate environmental compliance structure, including the CM and contact information.

(b)    Comprehensive overview of this ECP, the EMS, and other

marine environmental protection requirements.

(c)     The reporting system used to report non-compliance.

(d)     Sanctions and consequences for violations such as remedial training, suspension, termination, and civil and criminal liability.

(e)     Pollution prevention and minimization programs specifically relating to steward, deck, and engine department procedures and operations.

(f)     All requirements set forth in the Engineering section of this ECP.

(g)     Position specific training in the operation, maintenance and repair of oily water separators, incinerators, oil content discharge monitoring equipment, and other pollution prevention equipment.

(h)     Procedures for solid and hazardous waste segregation and storage, disposal, and reporting of releases.

(i)     All other shipboard environmental protection related procedures examined and described in the required initial review.

(5)     All new crewmembers reporting to work onboard MISUGA Covered Vessels shall receive training within fourteen (14) days of beginning to work on board the vessel. MISUGA shall maintain documentation onboard each Covered Vessel verifying that all officers and crewmembers working on the vessel have received the required training. Such documentation shall be made available to the TPA, CAM, and the United States upon request.

(6)     The Chief Engineer and Chief Officer onboard each Covered Vessel listed shall prepare independent written verification that all engine room and deck crew members have received the training required by this EMS/ECP. All engine room crewmembers shall sign and date a statement acknowledging completion of the training. This written verification, together with the signed acknowledgment, shall be completed semi-annually and maintained in the engine control room of each vessel.

N.   **ENGINEERING REQUIREMENTS**

(1)   Time of Implementation. Unless otherwise stated, all of the Engineering Requirements set forth below shall be implemented on Covered Vessels as soon as is reasonably practicable, but in any event not later than six (6) months from the date of sentencing.

(2)   Environmental Control System

a.   MISUGA shall implement an Environmental Control System or ECS to help prevent unauthorized usage of connections within the engine room, machinery spaces, and cargo/deck spaces.   Under the ECS, MISUGA shall require crew members to use numbered seals, locks, or welds (on flanges) to prevent the unauthorized connection to, and discharge through, piping systems that are or may be connected to the oily bilge system or and overboard discharge connections, to include those used in cargo tank stripping/washing. Seals used as part of the ECS shall be non-reusable and uniquely numbered.

b.   An ECS Seal Log shall be maintained by the Chief Engineer that records each time a seal is affixed or removed in the engine room and machinery spaces, including the date, time, seal number removed, seal number affixed, personnel involved, and reason for any seal removal or replacement.  The keys used to open locks utilized as a part of the ECS shall be controlled. This ECS Seal Log shall be different from the ECS Seal Log used by the Chief Officer in the cargo and deck spaces.

c.   An ECS Seal Log shall be maintained by the Chief Officer that records each time a seal is affixed or removed in the cargo or deck spaces and pump room, including the date, time, seal number removed, seal number affixed, personnel involved, and reason for any seal removal or replacement.  The keys used to open locks utilized as a part of the ECS shall be controlled. This ECS Seal Log shall be different from the ECS Seal Log used by the Chief Engineer in the engine room and other machinery spaces.

d.   Any existing seals that are found to have deteriorated or had their numbers partially or completely erased shall be replaced immediately, with the reason for replacement entered in the respective ECS Seal Log.

e.   The CM will be responsible for ensuring that no duplication of ECS seal numbers occur and will maintain documentation indicating which series of environmental seals have been supplied to each vessel.

(3)   Tank Piping

   a. To prevent unauthorized manipulation of waste management systems within the engine room and machinery spaces, each Covered Vessel shall maintain Classification Society-approved drawings that reflect all approved modifications made to waste management systems.

   b. MISUGA shall establish and maintain approval procedures for any modifications made to shipboard waste management tanks or their systems.  Those procedures shall require prior CM approval for all non-emergency modifications.   Any emergency modification must be reported to the TPA and CAM promptly after work is performed. Prompt approval or removal of any emergency modifications after the emergency has ended shall be required.

   c. Within thirty (30) days of sentencing, the CM shall ensure that notification is given to all Covered Vessels regarding the prohibition against using unauthorized stub pipes, cross connections, or piping on engine room waste and cargo tank stripping/washing systems.

   d. Personnel working on Covered Vessels shall promptly notify the CM of the existence and purpose of any unauthorized stub pipes, cross connections, or piping on engine room waste and cargo tank stripping/washing systems in a Covered Vessel.  Within fourteen (14) days of receiving such information, the CM shall ensure that it is relayed to the Interested Parties, along with any findings and corrective actions.

   e. Classification Society-approved drawing(s) representing the current physical layout of the systems shall be available on board.  The Chief Engineer shall maintain documentation explaining the reason(s) for any changes/modifications made after the date of sentencing for engine room/machinery space systems. The Chief Officer shall maintain documentation explaining the reason(s) for any changes/modifications made after sentencing for cargo tank stripping/washing systems.  Copies of this documentation and drawing(s) shall be maintained aboard the vessel and provided to the TPA and CAM upon request.

   f. To prevent unauthorized usage of bilge water tanks or oily waste tanks, MISUGA shall require that ECS seals or locks be placed on all tank hatches, valves, or flanges that could allow for an external connection to the system.  The ECS Seal Log or Lock Log shall track any time a processed bilge water tank or oily waste tank is opened.

(4)    Bilge-Main Cross Connections

    a.    Within sixty (60) days of sentencing, the CM shall ensure that notification is provided to all Covered Vessels regarding the prohibition against the non-emergency usage of cross connections from engine room bilge mains to the suction piping of larger pumps which may be referred to as the "fire and general service pump" or "fire, bilge and ballast" pump.  The notification shall state that such usage is similar to bypassing the OWS equipment and is strictly prohibited, except in the case of an emergency.  Any method to discharge overboard via the soot collection tank and soot eductor must be disabled and locked out.

    b.    The deck plates above or near the locations of these cross connections or other interconnected systems and the valve bodies and associated hand wheels shall be painted international orange.  A brightly colored sign with three inch letters shall be permanently fixed nearby, stating – "Bilge System Piping Crossover – Emergency Use Only."

    c.    To prevent unauthorized usage of those valves, MISUGA shall require that ECS seals be placed on such valves.  The ECS Seal Log shall track any time a crossover to the bilge main is opened.  If a valve is remotely operated from the engine control room, the associated push button or switch must be unable to be used without breaking an environmental seal.

(5)    Emergency Bilge Suctions

    a.    All other bilge suction valves not connected to the bilge main, and independent emergency suctions to the vessel's engine room bilges, like those which may be connected to sea water circulating pumps, shall be painted international orange on all Covered Vessels and labeled in a manner similar to "Emergency Bilge Suction - Emergency Use Only."  The valve wheels will also have a numbered and logged ECS seal capable of breakaway during emergencies, testing, and maintenance.

(6)    Blank Flanges

    a.    To prevent unauthorized connections within the engine room and machinery spaces of vessels, every blank flange connected to overboard piping, on systems such as salt water service, main engine raw water cooling or other systems, shall be permanently secured, removed, or fitted with numbered ECS seals through the flange bolts that will break

when such bolts are removed, to prevent unauthorized connections and discharges. The ECS seals used shall be numbered and records kept in the ECS Seal Log. Alternative sealing methods, such as numbered foil-coated sticker seals for flanges, may also be used.

b.    The blank flange securing the bilge and sludge transfer system shore connection discharge valve at the discharge stations shall also require controls as part of the ECS.

(7)    Additional OWS / OCM Requirements

a.    The sample line from the OWS discharge connection to the sample/flush line control valve will be painted a bright color to distinguish it from other tubing and piping in the area. The line must be routed so it is clearly visible to the extent possible for its entire length. No additional connections or tees of any kind may be added to the line.

b.    MISUGA shall have the OCM manufacturer or contracted distributor perform periodic testing as per the manufacturer's recommended timetable that ensures the OCM requires a sample flow for normal operation and control.

c.    Every Covered Vessel shall perform monthly operational tests of the OWS and OCM in the presence of the Chief Engineer, and one other engineer. The test shall be logged in the vessel's ORB. The Chief Engineer shall send a report to the assigned superintendent and CM.

d.    In addition to the operational test performed in the presence of the TPA, every Covered Vessel shall conduct an annual operational test of the OWS system under actual operational conditions. This test shall include one (1) full hour of continuous processing of the contents of the Bilge Holding Tank without dilution, and without dilution of the sample line leading to the OCM,[1] conducted by the Chief Engineer in the presence of a MISUGA shore-side representative or Class surveyor, and any other engine room personnel assigned responsibility for the operation and/or maintenance of the OWS. If an actual discharge is not feasible due to the location of the vessel or the levels of the bilge holding tanks, then the discharges shall be through a recirculation line, in accordance with the procedures approved by the vessel's Classification Society and provided further that soundings of the bilge holding tanks shall be made

---

[1] A test performed where the source tank is diluted with water or does not contain bilge water is strictly prohibited.

before and after the test and shall be made a part of the test record and providing that any alarms shall be recorded and made part of the test record. All of the above shall be recorded in the Oil Record Book (Part I). In the event that the assessment determines the OWS is not operating as designed, then an immediate report shall be made to the cognizant superintendent, CM, the Interested Parties, the TPA, and the CAM, with a copy of the engine room alarm printout to be retained.

e. Every Covered Vessel shall inspect the OWS source tanks every six (6) months and remove any accumulated oil if necessary. The OWS source tanks shall be cleaned during dry docking or sooner if necessary. Such cleaning shall be logged in the PMS.

f. Anytime an OCM is subject to maintenance or calibration, such actions shall be logged in the ORB.

(8) Recordkeeping

a. All sounding records required by this section shall be maintained and available to auditors for the duration of the ECP.

b. A portable pump log shall be maintained documenting all instances of onboard use of a pneumatic or portable pump. The log shall include a description of the fluid pumped, its source, and the tank or location where the fluid was transferred. The log shall include the date and time the pump was used and shall identify the person(s) who checked out the pump and operated it.

(9) Oil Record Book Entries

a. Entries made into the ORB shall be made and signed by the officer or officers in charge of the operation, reviewed and countersigned by the Chief Engineer for ORB Part I, and each completed page shall be signed by the Master.

(10) Tank Sounding Records

a. MISUGA shall provide each Covered Vessel with a standard format tank sounding log that includes, for each sludge tank, bilge tank associated with bilge water and/or oil residues (sludge), and cargo waste/washing/stripping tank, the tank name/designation, tank capacity, sounded quantity and time and method of sounding. Soundings from each tank shall be taken at least daily. The individual

taking the tank sounding shall make entries in the tank sounding log and sign each entry.

(11) Fuel Oil/Lube Oil Purifier Settings and Line Breaks

 a. MISUGA shall have a standard system for monitoring fuel oil and lube oil management on a monthly basis, including the operation of the fuel oil and lube oil purifiers. Any incident involving ships receiving proven poor quality fuel shall be noted in the Engine Room Log or similar record once it becomes known, and such entries shall refer to the relevant bunker receipts.

 b. Any extraordinary operations (such as increased frequent draining of fuel oil service and settling tanks, draining engine lube oil sump tanks of excessive water) shall be recorded in the official Engine Room Log and explained to the extent possible, and the records made available for inspection.

 c. All oil leaks exceeding manufacturer or historical volumes, including any fuel and/or lubricating oil leaks resulting from mechanical failure shall be reported to the CM.

(12) Oil-to-Sea Interfaces

 a. MISUGA shall establish a logbook for each Covered Vessel for monitoring equipment having oil-to-sea interfaces which relies on mechanical tension, hydrostatic pressure on the seal and the surface tension between water and oil to minimize oil releases to the sea. Such interfaces may include stern tube bearings, stabilizers, controllable pitch propeller systems, maneuvering thrusters, propulsion pods, and similar equipment whereby the leakage of a sealing component may cause a loss of operating medium into the waters surrounding the vessel. Any replenishment of oil into the head tanks, operating systems reservoirs, or other receivers associated with this equipment shall be logged, regardless of the quantity involved. Ingress of water or drainage of water into or from these systems must also be logged, as far as practicable.

 b. Any extraordinary operations (such as frequent draining of interface operating systems, tanks and spaces of excessive water) shall be recorded in the official Engine Room Log, explained to the extent possible, and the records made available for inspection.

(13) Fleet Operational Survey

    a.     Within six (6) months of the date of sentencing, MISUGA shall issue a survey to all Masters on its Covered Vessels for information on how to improve MARPOL compliance, to include what new equipment, maintenance, parts, and procedures would be beneficial. This survey shall include a request for the frank opinions of the vessels' officers as to their ability to adequately maintain the vessels' systems, equipment, and components will be included. The survey will emphasize non-retaliation for open and honest opinions and reports of current noncompliant or unsatisfactory circumstances.

    b.     The CM shall evaluate the responses and establish a plan to evaluate, test, and implement viable ideas for improvement. The CM shall also address, to the extent practicable, legitimate maintenance concerns suggested by the vessels' Masters and Officers.

    c.     A summary of the reported information and corrective actions will be provided to the Interested Parties, the CAM, and the TPA.

## O.   DOCUMENTATION AVAILABLE FOR INSPECTION

The CM shall ensure that all documentation required by this EMS/ECP is maintained and available for inspection by the TPA and CAM and the United States. The Master of each Covered Vessel under this ECP, shall maintain on board the vessel, all records required by International conventions and treaties including SOLAS, the ISM Code, and MARPOL and applicable State and Federal statutes and regulations and any additional documents required under this EMS/ECP, such as crew training records, and will make these records available to the TPA and CAM and the United States upon request. A summary of this information and any explanation, where appropriate, shall be included in the reports to be submitted to the United States by the TPA.

## P. CHANGES TO OPERATION/MANAGEMENT

The parties recognize that during the term of probation, the number and identity of vessels operated and/or managed, by MISUGA may increase or decrease. Any vessel, the operation or management of which is assumed by MISUGA, may call at United States ports during the period of probation and is manned by Manila Ocean Crew Management Inc. shall be subject to the terms and conditions of this EMS/ECP. Any vessel removed from the operation or management by MISUGA shall be excluded from the scope of the EMS/ECP. MISUGA agrees that it will immediately (but in no event later than twenty (20

working days, excluding weekends or holidays, following a change) notify the United States of any change in name, flag of registry, recognized organization, ownership or class society of any such of MISUGA vessels, to include the operation or management of which is assumed by MISUGA. MISUGA agrees that this EMS/ECP shall remain in effect for all of the aforesaid vessels regardless of changes in the vessels' flag of registry, recognized organizations, name, or class society, so long as the vessels are managed or operated by MISUGA, may call at United States ports, and is manned by Manila Ocean Crew Management Inc. MISUGA shall notify the United States before any vessel is released from the requirements of the EMS/ECP due to a change in operation or management. MISUGA shall ensure that any vessel subject to this paragraph is audited in accordance with this ECP, and that this audit takes place no later than one hundred and eighty (180) days after assuming technical management of the vessel.

## Q. SELF-ENFORCEMENT

MISUGA further agrees that it will undertake and implement the necessary procedures to ensure that this EMS/ECP is diligently complied with.

## R. REVISIONS/MODIFICATIONS

The requirements of this EMS/ECP, including the dates and time periods mentioned herein, shall be strictly complied with. Should MISUGA be unable to comply with any of the deadlines, MISUGA shall immediately notify the United States in writing of the reason(s) for non-compliance, and propose a revised timetable. The United States shall then determine whether the revised timetable should be accepted.

## S. REPORTS

All reports, documents and correspondence required under this EMS/ECP to be sent to the United States shall be sent to the following offices:

(a)     U.S. Department of Justice
        Environmental Crimes Section
        Attn: Kenneth E. Nelson
        150 M Street, NE, Suite 4.120, Washington, D.C. 20002
        Email: Kenneth.Nelson3@usdoj.gov

(b)     U.S. Attorney's Office
        Middle District of Florida
        Attn: John Gardella

400 W Washington St #3100
Orlando, FL 32801
Email: John.Gardella@usdoj.gov

(c)     U.S. Coast Guard Commandant (CG-INV-1)
        Office of Casualty Investigations & Analysis
        Attn: Designated Representative of the Coast Guard  2703 Martin Luther
        King Jr. Ave, SE Stop 7501
        Washington, D.C. 20593-7501
        Email: USCGECP@uscg.mil (less than 10GB)

(d)     U.S. Probation
        401 W. Central Blvd., Suite 1400
        Orlando, Florida 32801-0140

2020 JUL 10   PM 3:45   FILED

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS that Misuga Kaiun Co., Ltd. (the "Company"), a company formed and validly existing under the laws of Japan, with offices at 1692-2 Nakanosho-Cho Shikokuchuo-Shi Ehime 799-0422 Japan, has made, constituted and appointed and by these presents does make, constitute and appoint George M. Chalos, Esq. and/or Briton P. Sparkman, Esq., of Chalos & Co, P.C., 55 Hamilton Avenue, Oyster Bay, New York, 11771, to be the true and lawful Attorney(s) of the Company with full power to do the following acts and things, or any of them.

1.  To appear on behalf of the Company in that certain criminal matter in the United States District Court, Middle District of Florida, Orlando Division, in the case entitled <u>United States of America v. Misuga Kaiun Co., Ltd.</u>, charging one (1) criminal count against the Company and;

2.  To do all things and to execute any and all documents and instruments deemed necessary or incidental to appear before the United States District Court, for the Middle District of Florida; to appear at all Court Proceedings on behalf of the Company including, but not limited to, an Initial Appearance and/or Change of Plea Hearing, to enter a plea of guilty on behalf of the Company to the Count One of the "Information" in accordance with a Plea Agreement entered into between the United States of America and the Company pursuant to Federal Rule of Criminal Procedure 11(c) in the matter entitled <u>United States of America v. Misuga Kaiun Co., Ltd.</u> and;

3.  The Company waives its right to appearance at the Initial Appearance, Change of Plea Hearing, and/or Sentencing Hearing and exercises its right to appear through counsel in accordance with Federal Rule of Criminal Procedure Rule 43(b)(1) and authorizes George M. Chalos, Esq. and/or Briton P. Sparkman, Esq. to take the necessary steps to plead guilty on behalf of the Company to the "Information" in the matter entitled <u>United States of America v. Misuga Kaiun Co., Ltd.</u>, and;

4.  The Company, by its Managing Director, acknowledges that it will appear and be present at all future hearings before the Court through the appearance and participation of George M. Chalos Esq. and/or Briton P. Sparkman, Esq. who are hereby authorized to act on behalf of the Company and participate in any and all future hearings in accordance with the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, and the Local Civil and Criminal Rules of the United States District Court for the Middle District of Florida; and,

5.  The Managing Director deems it in the best interests of the Company that George M. Chalos, Esq. and/or Briton P. Sparkman, Esq. appear on behalf of the Company as the designated Corporate Representative for any and all necessary proceedings in the case entitled <u>United States of America v. Misuga Kaiun Co., Ltd.</u>

1

The foregoing Power of Attorney was made and executed this the _07_ day of July, 2020.

_____

Yasuhiro Sone
Managing Director
**Misuga Kaiun Co., Ltd.**

**CORPORATE RESOLUTION**

**MISUGA KAIUN CO., LTD.**
1692-2 Nakanosho-Cho Shikokuchuo-Shi Ehime 799-0422 Japan

Misuga Kaiun Co., Ltd. ("the Company"), acting by and through its Managing Director, Yasuhiro Sone, in accordance with applicable law and the Company's organizational documents, takes the following action:

**IT IS RESOLVED:**

THAT, the attached Plea Agreement was entered into and agreed between the United States of America and the Company, and same having been explained to the Company by its counsel, and the Managing Director understanding those terms and conditions, and all corporate formalities required for the authorizations contained herein having been observed, the Company hereby assents to those terms and conditions and agrees to enter into the said written Plea Agreement in the matter pending in the United States District Court, Middle District of Florida, Orlando Division, in the case entitled United States of America v. Misuga Kaiun Co., Ltd.; and

**IT IS FURTHER RESOLVED:**

THAT, George M. Chalos, Esq. and/or Briton P. Sparkman of Chalos & Co, P.C., are hereby authorized, empowered, and directed to represent the Company and to execute the Plea Agreement on behalf of the Company and to execute any and all other documents and instruments required by the District Court, and to take any and all actions to do any and all other things necessary or incidental for the execution and entry of the Plea Agreement, and to comply with its provisions; and

**IT IS FURTHER RESOLVED:**

THAT, the Company has authorized George M. Chalos, Esq. and/or Briton P. Sparkman to enter a guilty plea on behalf of the Company to Count One of the Information in the case entitled United States of America v. Misuga Kaiun Co., Ltd., to appear before the Court at all necessary hearings and Court settings, as required by the Plea Agreement and/or the District Court; and

**IT IS FURTHER RESOLVED:**

THAT, the terms and conditions of the attached Power of Attorney have been explained to the Company, and the Company understanding those terms and conditions, and all corporate formalities required for the authorizations contained therein having been observed, the Company hereby assents to those terms and conditions and authorizes the

1

issuance of the Power of Attorney for the matter pending in the United States District Court, Middle District of Florida, Orlando Division, in the case entitled United States of America v. Misuga Kaiun Co., Ltd.; and

**IT WAS FURTHER RESOLVED:**

THAT the Company entered this Corporate Resolution and accompanying Power of Attorney in accordance with all corporate formalities, Company bylaws, and the applicable laws of Japan.

Executed this the ⟋⟍ of July, 2020.

_____
Yasuhiro Sone
Managing Director
**Misuga Kaiun Co., Ltd.**

2